# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIE NORWOOD, | )<br>) |
| Plaintiff, | )<br>) |
| | ) No. 10 C 3143 |
| v. | )<br>) Magistrate Judge Sidney I. Schenkier |
| DR. LIPING ZHANG, *et al.*, | )<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Willie Norwood, filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that Dr. Liping Zhang, Dr. Parthasarathi Ghosh, and Wexford Health Services ("Wexford"), healthcare providers at Stateville Correctional Center ("Stateville"), acted with deliberate indifference toward Mr. Norwood when treating his complaints of eye pain and decreased visual acuity. Mr. Norwood also has alleged a supplemental state law claim alleging medical malpractice. Defendants deny these claims. The case comes before the Court on a motion by Mr. Norwood, pursuant to Federal Rule of Evidence 706, asking that we appoint an expert to assist the jury in understanding the medical and scientific evidence in this case and to apportion any related costs to the defendants (doc. #116: Pl.'s Motion at 1). For the following reasons, we now grant the motion, provided Mr. Norwood satisfies several conditions.

## I.

As an inmate at Stateville, Mr. Norwood alleges that he sought medical treatment from defendant physicians for "severe eye pain and discomfort" on at least ten occasions between June and August 2009 (Pl.'s Motion at 2). Mr. Norwood alleges that on those occasions, the defendant physicians committed medical malpractice by misdiagnosing his ocular herpes as

bacterial conjunctivitis (*id.*). Mr. Norwood further alleges that the defendant physicians were deliberately indifferent to his serious medical condition, and that as a result of their alleged mistreatment – including failing to make a timely referral to an ophthalmologist outside the prison – he endured increased pain and suffering and developed "substantial corneal scarring," eventually requiring a corneal transplant in December 2009 (*id.*). Mr. Norwood also alleges that the defendants negligently supervised and conducted his post-operative care, resulting in "intense and untreated [eye] pain and severely impaired vision" after his corneal transplant (*id.* at 2-3). Mr. Norwood claims that as a result of the defendants' collective actions, he is unable to engage in activities such as reading, painting, and outdoor recreation; has a fear of falling when walking up or down stairs; and is afraid of being unable to protect himself "in the event of a physical altercation or other incident" at Stateville (*id.* at 3).

Mr. Norwood asserts that the medical evidence in this case is complex enough that expert assistance is necessary to enable a jury to understand the issues presented at trial relevant to both his medical malpractice and deliberate indifference claims (Pl.'s Motion at 5-6). Mr. Norwood concedes that some of his symptoms, like eye pain and redness, are within the ken of an average layperson, but argues that the relationship between his worsening condition and the defendants' alleged misdiagnoses and treatment delays requires expert evaluation to help the jury determine whether the defendants breached their duty under Section 1983 or committed medical malpractice (*id.* at 4-6).

Mr. Norwood further asserts that because he is indigent, he is incapable of retaining an expert to review and explain the relevant scientific and medical evidence (Pl.'s Motion at 7). He claims that as a result of his inability to procure expert testimony, the "only source of unbiased medical evidence [at trial] would be an expert appointed by the Court [under Rule 706]" (*id.* at

2

6). Mr. Norwood argues that in light of the defendants' substantial financial resources, the Court should apportion all of the costs for an independent expert's time to the defendants (*id.* at 7).

In response to Mr. Norwood's medical malpractice and deliberate indifference claims, the defendants rely heavily on the deposition testimony of Dr. Jose De La Cruz, the surgeon who performed Mr. Norwood's corneal transplant in December 2009 (doc. #139: Defs.' Resp. at 2). The defendants assert that the deposition testimony of Dr. De La Cruz, who opined that Mr. Norwood neither suffered from ocular herpes nor experienced any harm from the defendants' allegedly inadequate or delayed care, refutes Mr. Norwood's claims, and that the defendants "should not be required to pay for an expert to [reach] the same conclusions as [Mr. Norwood's] treating physician (*id.*). The defendants claim that by seeking to obtain expert testimony in addition to that offered by Dr. De La Cruz, Mr. Norwood is "attempting to confuse the jury" (*id.* at 8). Alternatively, the defendants argue that the medical evidence relevant to Mr. Norwood's condition and treatment is not sufficiently complex that a jury would require expert testimony to accurately decide this case (*id.*).

The defendants also claim that if Mr. Norwood wishes to obtain expert testimony, he has other options apart from Rule 706. *First*, the defendants argue that Mr. Norwood could cross-examine the defendants' expert witnesses at trial to show that his treatment was inadequate (*id.* at 3, 7). *Second*, defendants propose that Mr. Norwood could obtain his own expert by: (1) using all or part of his $5,000.00 settlement with another defendant in the case, Dr. Norman Patterson, to pay an expert; (2) finding a willing *pro bono* medical expert to testify on his behalf, or (3) having his court-appointed counsel absorb the cost of hiring an expert (*id.* at 9-12).

3

## II.

Federal Rule of Evidence 706(a) provides, in relevant part, that "[o]n a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed." Rule 706 is intended to promote accurate fact-finding during litigation, 29 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, *Federal Practice and Procedure* § 6304 (3d ed. Supp. 2011), by authorizing a court to appoint neutral expert witnesses where expert testimony can help the trier of fact understand evidence critical to accurately deciding a serious dispute. *Gorton v. Todd*, 793 F. Supp. 2d 1171, 1181 (E.D. Cal. 2011). Generally, where parties employ competing experts, the adversarial system ensures that a balanced presentation of the issues has been provided for the jury. *Gorton*, 793 F. Supp. 2d at 1182. However, if the testimony of the parties' witnesses does not adequately present the issues for the jury, the court may appoint a neutral expert to ensure that the jury decides the case on the correct grounds. *See Federal Practice and Procedure* § 6304 (3d ed. Supp. 2011).

For example, Rule 706 is often employed to provide the jury with neutral assistance where the parties' competing experts discuss technically complex issues outside the understanding of an average layperson. *See, e.g., In re High Fructose Corn Syrup Antitrust Litig.,*, 295 F.3d 651, 665 (7th Cir. 2002). Rule 706 may also be used where one party fails to present expert testimony, leaving the jury with an "unbalanced presentation of the issues." Joe S. Cecil & Thomas E. Willging, "Court-Appointed Experts," Federal Judicial Center, *Reference Manual on Scientific Evidence* 538 (1994); *see also Goodvine v. Ankarlo*, No. 12-cv-134-WMC, 2013 WL 1192397, at *1 (W.D. Wis. Mar. 22, 2013) ("Even assuming that the examining doctors were completely neutral when they made their notes, the medical file will be presented

4

and explained through the defendants' witnesses meaning an alternative perspective may provide some counterpoint to the defendants' interpretations.").

The compensation for the expert's work must be reasonable, and may be paid "by the parties in the proportion and at the time that the court directs--and the compensation is then charged like other costs." Fed. R. Evid. 706(c)(2). Under Rule 706(c)(2), the Court has broad discretion in apportioning the expert's costs between the parties. *Ledford v. Sullivan*, 105 F.3d 354, 360 (7th Cir. 1997).[1] That discretion includes the ability to direct one party to pay the entire cost of the neutral expert witness's testimony. *Id.* at 360-61 (collecting cases). As the Ninth Circuit has explained, Rule 706(c)(2) provides for such discretion because "[o]therwise, we are faced with an inflexible rule that would prevent the district court from appointing an expert witness whenever one of the parties in an action is indigent, even when the expert would significantly help the court [to understand the issues]." *McKinney v. Anderson*, 924 F.2d 1500, 1511 (9th Cir. 1991), *vacated on other grounds sub nom. Helling v. McKinney*, 509 U.S. 25 (1993).

### III.

We recognize that courts do not frequently appoint neutral expert witnesses under Rule 706, *see* WRIGHT & MILLER, *Supra*, § 6304. That said, "if scientific, technical, or other specialized knowledge will assist the trier-of-fact to understand the evidence or decide a fact in issue, a court will utilize expert witnesses." *Ledford*, 105 F.3d at 358-59 (citing Fed. R. Evid. 702). The relevant medical evidence for Mr. Norwood's medical malpractice and deliberate indifference claims is sufficiently complex to merit such an appointment.

---

[1] *Ledford* addressed Rule 706(b), which was revised by Congress in 2011 and is now 706(c)(2).

5

## A.

To prevail on a medical malpractice claim under Illinois law, a plaintiff must provide expert testimony to establish the physician's standard of care, a deviation from the applicable standard, and an injury proximately caused by the physician's lack of skill or care. *Donais v. United States*, 232 F.3d 595, 598 (7th Cir. 2000) (citing *Purtill v. Hess,* 111 Ill. 2d 229, 242 (Ill. 1986)). This requirement of expert testimony to establish a physician's standard of care is unnecessary only where "the physician's negligence is so grossly apparent or the treatment so common as to be within the everyday knowledge of a layperson." *Id*. Federal courts hearing state medical malpractice claims may also dispense with this requirement for expert testimony where no technical issues relevant to the claim require resolution in order to decide whether a defendant committed malpractice. *Gipson v. United States,* 631 F.3d 448, 452 *reh'g denied*, 638 F.3d 816 (7th Cir. 2011) (citations omitted).

This is not a *Donais* or *Gipson* type of case. No one asserts that any negligence by defendants was "grossly apparent"; indeed, defendants staunchly deny that there was any negligence at all. Mr. Norwood's medical malpractice claim involves questions that require a medical expert's analysis to assist a jury in deciding, for example: (a) whether his actual medical condition was ocular herpes, bacterial conjunctivitis, or some other condition; and (b) whether the defendants adequately and appropriately treated his condition both before and after his corneal transplant. While we agree with the defendants that jurors are capable of understanding many complicated subjects, we find that Mr. Norwood's allegations of negligent misdiagnosis and delayed treatment are of a type that would be difficult for an average layperson to understand and accurately assess without expert medical assistance. *See Gilman v. Amos*, 445 Fed. App'x 860, 864 (7th Cir. 2011); *see also Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

## B.

The same is true with respect to Mr. Norwood's deliberate indifference claim. "The Eighth Amendment requires states to provide incarcerated persons with adequate medical care." *Brown v. Dowlut*, 248 F.3d 1156 (7th Cir. 2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Prison officials violate the Eighth Amendment when they act with deliberate indifference towards a prisoner's serious medical condition. *E.g., Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008).

Of course, Mr. Norwood's medical malpractice claim does not become a claim for a constitutional law violation merely because he is a prisoner. *Estelle*, 429 U.S. at 106. Neither medical malpractice nor disagreement with a physician's course of treatment is sufficient to prove deliberate indifference. *E.g., Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007). In order for Mr. Norwood to prove an Eighth Amendment violation, he must establish "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* While a prison official's failure to treat minor complaints does not qualify as an Eighth Amendment violation, an official's failure to treat more serious injuries and medical conditions may lead to liability. *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999) (collecting cases addressing the objective seriousness of conditions such as cancer, epilepsy, painful and infected cysts, and symptoms such as muscular pain and burning of the skin and eyes).

In order to prevail on his Eighth Amendment claim, Mr. Norwood must prove both that his illness was objectively serious, and that in addressing his condition, the defendant physicians knew of and disregarded a serious risk to Mr. Norwood's health. *See Edwards*, 478 F.3d at 830-31. An objectively serious condition is one that a physician has diagnosed as requiring treatment, or one that is so obvious that a normal person would recognize that a doctor's

attention and treatment is necessary. *Id.* (citing *Greeno*, 414 F.3d at 653). Mr. Norwood's complaints of decreased visual acuity and pain, as well as his claim that his medical records contained reference to a history of ocular herpes, are consistent with other conditions regarded as objectively serious. *See id.* at 831 (collecting cases in which a hernia, arthritis, minor burns, heartburn and vomiting, and a broken wrist were found to be objectively serious). Expert testimony as to whether Mr. Norwood suffered from ocular herpes during the period in which he says he was denied care is thus relevant to the objective component of his deliberate indifference claim.[2]

The subjective component of proving deliberate indifference requires evidence that the defendants were aware of a substantial risk to Mr. Norwood's health posed by his symptoms and history of ocular herpes, and disregarded that risk by failing to provide him with adequate medical care and treatment. *See, e.g., Greeno*, 414 F.3d at 653 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Here, Mr. Norwood must first demonstrate that the defendants "knew of the need from evidence that the serious medical need was obvious." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998)) (internal quotation marks omitted). The evidence regarding Mr. Norwood's eye complaints is not as straightforward as examples used in our caselaw for circumstances in which a serious medical need is "obvious." *See id.* (quoting *Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996) ("[i]f the symptoms plainly called for a particular medical treatment-the leg is broken, so it must be set; the person is not breathing, so CPR must be administered-a doctor's deliberate decision not to furnish the treatment might be actionable under § 1983")). However, Mr.

---

[2]We recognize that Dr. De La Cruz says Mr. Norwood did not have ocular herpes at the time he underwent surgery in December 2009. A Rule 706 expert will consider whether he or she agrees with that opinion, and in addition, whether it can be determined whether Mr. Norwood was experiencing that condition in the spring and summer of 2009 when he says he was denied proper treatment.

8

Norwood's physician Dr. Zhang did testify that if left untreated, ocular herpes can lead to visual loss and corneal scarring (doc. # 140: Pl.'s Rep. Ex. B. at 128). To decide whether the need for care was "obvious" from Mr. Norwood's medical record, the jury will require expert assistance to determine the standard of care for treatment and diagnosis in patients with similar history and symptoms to Mr. Norwood.

Beyond demonstrating that the seriousness of his condition and the need for treatment were obvious, Mr. Norwood will also need to show that the defendants subjectively and recklessly disregarded the risk it posed to his health by providing him with substandard care for the condition. *See, e.g., Johnson*, 433 F.3d at 1013 (holding that "[i]t is not enough to show . . . that a doctor should have known that surgery was necessary; rather, the doctor must know that surgery was necessary and then consciously disregard that need in order to be held deliberately indifferent") (citation omitted); *see also Greeno*, 414 F.3d at 653 (citing *Farmer*, 511 U.S. at 837). While Mr. Norwood did receive care from the defendants on multiple occasions for his complaints, that treatment "does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition." *Edwards*, 478 F.3d at 831 (citation omitted). A plaintiff can establish that defendants were deliberately indifferent if they failed to act, or if they took "woefully inadequate action." *Reed*, 178 F.3d at 854 (citing *Hudson v. McHugh*, 148 F.3d 859, 863 (7th Cir.1998)). A neutral expert appointed under Rule 706 would be able to discuss the professional standards related to eye care, and opine whether the defendants' care for Mr. Norwood departs far enough from the standard of care to qualify as deliberately indifferent to the risk of harm presented by his medical condition.

## C.

For the reasons we have explained, the Court finds that the medical expert testimony Mr. Norwood seeks would further the truth-seeking function in deciding his claims. We find unsatisfactory the defendants' contention that Mr. Norwood can simply cross-examine their witnesses at trial in order to meet his burden of proof on his medical malpractice and deliberate indifference claims. If the shoe were on the other foot, we doubt that defendants would be satisfied with the proposition that it was sufficient for them to be limited to cross-examining plaintiff's opinion witnesses and seeking to "punch holes" in their testimony.

We also disagree with the defendants' contention that Mr. Norwood is seeking a risk-free appointment of a neutral expert, or an expert who will testify in his favor. The purpose of the neutral expert is to assist the Court and the jury in determining whether Mr. Norwood's claims have merit. In asking for the Court to appoint a neutral expert under Rule 706, Mr. Norwood indeed is taking a risk: that the neutral expert will conclude that the medical evidence fails to support his claims of malpractice and deliberate indifference. The Rule 706 expert could help establish that defendants' position is meritorious, and that plaintiff lacks a triable issue on some or all of his claims.

Defendants' argument that Mr. Norwood's lawyer should absorb the cost of a medical expert to testify on behalf of Mr. Norwood is a non-starter. We understand that this may be a common approach in personal injury cases when a lawyer voluntarily decides to undertake the representation of a client. However, in this case, plaintiff's counsel came to represent Mr. Norwood not as part of a voluntarily-struck agreement, but rather through appointment by this Court pursuant to Local Rule 83.40. Under that rule, as a condition of membership in this Court's trial bar, plaintiff's counsel is required to accept appointment to represent indigent

litigants on a *pro bono publico* basis. Plaintiff's counsel has done so in this case with vigor, spending substantial time and resources in advancing Mr. Norwood's claims. We do not consider advancing the costs for expert witnesses to be required of counsel who accept appointments under Local Rule 83.40.

Finally, defendants say that no expert should be appointed under Rule 706 unless plaintiff's counsel first exhausts efforts to enlist an expert willing to serve on a *pro bono* basis. That is a fair point, and as a result, we asked plaintiff's counsel to detail their efforts to find a *pro bono* expert. They have provided an explanation of those efforts (doc. # 146: Pl.'s Sur-Response at 5-6), and we are satisfied that plaintiff's counsel has exhausted reasonable avenues for obtaining an expert on a *pro bono* basis.

### D.

Thus, the Court concludes that Mr. Norwood has demonstrated that it is appropriate to appoint a neutral expert under Rule 706 in this case. That leaves us with two remaining questions: (1) payment of the cost of the expert, and (2) the scope of the inquiry that the expert will conduct. We address each of those questions in turn.

### 1.

Rule 706 affords the Court broad discretion in apportioning the cost of the appointed expert among the parties. Mr. Norwood argues that because he is indigent and defendants are solvent, we should order defendants to pay the full cost of the expert.

The updated financial affidavit that Mr. Norwood submitted with his sur-response (doc. # 146: Pl.'s Sur-Response, Ex. 1) shows that Mr. Norwood has little in the way of assets other than the proceeds of a $5,000.00 settlement with one of the defendants in this case. We recognize that the activity in Mr. Norwood's Trust Fund account shows that between June 19,

2012 and August 6, 2013, he received a little over $1,100.00 in Western Union checks from family members (*id.*). However, that evidence fails to show that Mr. Norwood has (or has access to) substantial funds from which he can foot the bill for an expert. That said, we agree that Mr. Norwood should not be able to impose the cost of an expert entirely on defendants, without himself being made to invest – in a way commensurate with his assets – in the appointment of an expert. *See Goodvine*, 2013 WL 119239, at *2 (requiring plaintiff in a prisoner case to pay one-half of the $238.26 in his prisoner trust account toward the cost of the services of a Rule 706 expert). We will require Mr. Norwood to do so in two ways.

*First*, for the first $4,000.00 in costs incurred through the use of a Rule 706 expert, we will require each side to contribute equally. This means that Mr. Norwood's initial contribution for the cost of the expert will be capped at $2,000.00. Any fees charged by the Rule 706 expert that exceed $4,000.00 will be borne by defendants in the first instance.

*Second*, in the event Mr. Norwood obtains a monetary recovery in this case, the Court at that time will entertain a defense request that Mr. Norwood pay some or all of the cost of the Rule 706 expert that initially was paid by the defense. The premise of the plaintiff's request that the defense be required to pay the cost of the Rule 706 expert is that Mr. Norwood is unable to do so. However, if Mr. Norwood achieves a recovery in this case, then – depending on the amount of the recovery – that no longer would be the case. A minimal recovery would not provide a basis for the defense to request a greater contribution from Mr. Norwood, but a substantial recovery could set the stage for that request.

The Court requires Mr. Norwood's agreement to these conditions as a predicate to the Court's appointment of a Rule 706 expert. By September 30, 2013, Mr. Norwood shall file a document stating whether he agrees to these conditions.

## 2.

Plaintiff has proposed the following procedure for selecting the Rule 706 expert:

"(1) each party should submit to the other by a date . . . a list of three potential experts, qualified to opine on the matters at issue in this case; (2) within 14 days of exchanging lists, the parties should confer to determine if they can agree to one of the six potential experts; (3) during that conference, if the parties cannot agree on an expert, each party can strike two of the experts on the other part[y's] list, leaving two potential experts, one from each list; (4) the remaining two experts will be submitted to the Court for consideration and the Court shall determine which of the two should be appointed."

(doc. # 140: Pl.'s Reply. at 14). Defendants (while not conceding that appointment of a Rule 706 expert is warranted) have stated in open court that they have no objection to this procedure. Likewise, the Court finds this procedure to be appropriate, and thus will adopt it. In the event that Mr. Norwood agrees to the conditions set forth above for appointment of the Rule 706 expert, the Court will set a timetable for the steps in the appointment process to be completed.

The parties do spar about the scope of the inquiry to be conducted by the Rule 706 expert. After considering the arguments of the parties, we set forth the following as the scope of inquiry that the Court considers appropriate: (1) whether Mr. Norwood suffered from ocular herpes at any time during 2009; (2) whether the defendant physicians misdiagnosed Mr. Norwood's eye condition; (3) whether the defendants' chosen treatment regimen was appropriate in light of any risk Mr. Norwood's condition posed to his health; (4) whether Mr. Norwood proximately suffered any injury from any alleged misdiagnosis, delay in treatment, or inadequate treatment by defendants; (5) whether Mr. Norwood's corneal scarring was the result of ocular herpes or instead resulted from some other condition; (6) whether Mr. Norwood, if diagnosed or treated differently, still would have likely required a corneal transplant; and (7) whether Mr. Norwood's post-surgical care by defendants satisfied the governing standard of care, and if not, whether that shortcoming caused or exacerbated any injury.

In identifying these areas of inquiry, the Court does not limit the Rule 706 expert who is appointed from refining these inquiries based on his or her assessment of the evidence. Nor does the Court in any way suggest what the outcome of the expert's inquiry will or should be.

## CONCLUSION

For the foregoing reasons, this Court grants in part and denies in part plaintiff's motion for appointment of a medical expert and apportionment of costs to defendants (doc. # 116). We grant the motion for appointment of a medical expert pursuant to Rule 706, subject to the conditions set forth in the Memorandum Opinion and Order. By September 30, 2013, plaintiff shall file a document stating whether he agrees to those conditions. We deny the motion insofar as it seeks to apportion all costs of the expert to defendants. The matter is set for a status hearing on October 9, 2013, at 9:00 a.m.

**ENTER:**

_____
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: September 13, 2013**